IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNETH MILLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-0610 |
| | ) | |
| CHARLES W. CARPENTER, Warden, | ) | Judge Campbell |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Kenneth Miller, a prisoner in state custody at Riverbend Maximum Security Institution, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record. The petition is ripe for review. For the reasons set forth herein, petition will be denied and this action dismissed with prejudice.

## I.    PROCEDURAL BACKGROUND

On May 23, 2008, the petitioner was found guilty by a Davidson County Jury of (1) conspiracy to deliver more than 300 grams of cocaine; (2) delivery of more than 300 grams of cocaine, and (3) possession with intent to deliver 300 grams or more of cocaine. On July 18, 2008, the petitioner was sentenced to 40 years' incarceration on each of the three counts on which he was found guilty, to be served consecutively, for a total effective sentence of 120 years. (ECF No. 28-18, at 14–16 (Judgments).) His conviction and sentence were affirmed on direct appeal. *State v. Miller*, No. M2008-02267-CCA-R3-CD, 2010 WL 1644969 (Tenn. Ct. Crim. App. April 22, 2010), *perm. appeal denied* (Tenn. Oct. 18, 2010).

Thereafter, the petitioner filed a *pro se* petition in the state court for post-conviction relief. (ECF No. 28-18, at 17–27.) Counsel was appointed and an amended petition was filed. (ECF No. 28-18, at 46–49.) The trial court conducted a hearing (*see* ECF No. 28-19) and denied the petition. (ECF No. 28-18, at 51–68.) That decision was affirmed on appeal as well. *Miller v. State*, No. M2012–01781–CCA–R3–PC, 2013 WL 2152548 (Tenn. Ct. Crim. App. May 20, 2013), *perm. appeal denied* (Tenn. Oct. 17, 2013).

Petitioner Miller filed his petition under 28 U.S.C. § 2254 in this Court on June 17, 2013. (ECF No. 1, at 12 (date of petitioner's signature)). The respondent has filed an answer along with a complete copy of the

underlying state-court record. The petition is timely, and this Court has jurisdiction.

## II.    STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[1]

> This case results from an ongoing drug investigation involving the Defendants. A Davidson County grand jury issued a superseding indictment on December 13, 2007, charging the Defendants Miller and [Ray Junior] Turner with conspiracy to deliver 300 grams or more of cocaine; the Defendants Miller and Turner with delivery of 300 grams or more of cocaine; [and] the Defendant Miller with possession with intent to deliver 300 grams or more of cocaine. . . ..

> We will summarize the proof in the light most favorable to the State. Agent Shelly Smitherman, with the Tennessee Bureau of Investigation ("TBI"), testified that she was the agent in charge of the investigation involving the Defendants, which began in December 2005. Agent Smitherman obtained a wiretap order allowing her to intercept the Defendants' phone calls; she explained that agents in the wireroom listened to the phone calls and that they would relay pertinent information to officers in the field conducting surveillance of the Defendants.

> Through intercepting these phone calls, it was determined that a drug deal was to take place on March 24, 2006, at the Rivergate Mall. The Defendant Miller was to deliver a kilogram ("kilo") of cocaine to an unidentified individual coming from Kentucky. Police conducted surveillance of the Defendant Miller throughout the day. At 11:34 a.m. on this day, the Defendant Miller phoned the Defendant Turner and asked him to "come and drop it off." TBI Special Agent Steve Talley testified that Kavares Davis ("Davis") arrived at the Defendant Miller's apartment at 1:34 p.m. At 1:47 p.m., officers observed the Defendant Turner, along with two other individuals, arrive at the Defendant Miller's apartment. The Defendant Turner went inside the residence through the garage door. After his arrival, the blinds were closed. A few moments later, the blinds were reopened, and the Defendants and Davis exited the apartment and stood out front talking for a time. Around 2:50 p.m., the Defendant Turner and Davis left the residence.

> Around 6:30 p.m., officers observed the Defendant Miller leave his apartment in his black Chevrolet Impala, heading toward the Rivergate area. When he arrived at the mall, the Defendant went inside the food court area and purchased some cookies. He received a call from Davis and then returned to his vehicle. The Defendant drove to the food court entrance, and a man got inside the vehicle. They drove around to the other side of the mall and parked near a green Pontiac Grand Am with Kentucky tags. Detective Herbert Kajihara, with the Twentieth Judicial Drug Task Force, saw the man who had been in the Defendant Miller's car walk back toward the mall. After the Defendant Miller left, Det. Kajihara continued to observe the Kentucky vehicle. He then saw the same man exit the mall, along with another male and a female juvenile, and get inside the car. The individuals were carrying packages.

> Officers followed the green Pontiac to a gas station. At the gas station, an individual later identified as Ned Wayne Thompson ("Thompson"), got out of the vehicle and placed something that looked like a bag in the trunk. When Thompson left the gas station, the

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

vehicle proceeded onto Interstate 65. Although radar was not used, Officer Michael Wilson of the Metropolitan Police Department paced the vehicle traveling 80 miles per hour in a 70 mile-per-hour zone. Officer Wilson stopped the vehicle. The State did not want to compromise the wiretap investigation, so the officers proceeded under the auspice that they were stopping the individuals for a traffic violation, and they obtained probable cause to search the vehicle due to a K-9 alert. Hidden behind carpeting inside the trunk, officers discovered two separately packaged bricks of cocaine, weighing approximately two kilograms.

Officers then procured search warrants for the Defendants' residences. During the search of the Defendant Miller's residence, police recovered: one kilo of cocaine from the kitchen; 124.5 grams of cocaine found inside a shoe box in the bathroom; $13,000 in cash from the safe; a notebook with drug ledgers, including names; some nine millimeter rounds for a handgun; and "gunk cans" containing cocaine. Officers also found items used to prepare the cocaine for resale-digital scales, a "kilo press," plastic baggies, and a "cutting agent" used to break down cocaine. The Defendant Miller also used a video camera to monitor the parking lot in front of his apartment. At the Defendant Turner's residence, Agent Talley was in charge of collecting evidence. Evidence collected included five notebooks containing drug ledgers found in the kitchen garbage can, digital scales, a vacuum bag sealer, two loaded handguns, a "kilo press," and a "cutting agent."

Kavares Davis, initially a co-defendant in this case, testified that he had entered a guilty plea to possession of .5 grams or more of cocaine and received an eight-year sentence under the terms of the agreement. Davis affirmed that the Defendant Turner was his uncle and that the Defendant Miller was his cousin. The Defendant Miller supplied him with cocaine at the time of his March 2006 arrest and had done so "off and on" for two or three years. In November or December 2005, Davis told the Defendant Miller that he did not like dealing with the Defendant Turner because of his high prices, $20,000 for a kilo of cocaine; however, the Defendant Miller continued to deal with the Defendant Turner.

Davis went to the Defendant Miller's apartment on the evening of March 23, 2006. The Defendant Turner was already there; he had brought three bricks or kilos of cocaine for the Defendant Miller, which were sitting on the table. The Defendant Miller said one of the kilos was "bad," and the Defendant Turner promised to replace it with another one the next day. The Defendant Turner took the "bad" kilo with him when he left.

According to Davis, the Defendant Turner showed up the following morning with two other men. Davis was already there because he and the Defendant Miller were supposed to go get something to eat. Davis went downstairs to let the Defendant Turner in through the garage. The Defendant Turner went upstairs, but Davis stayed downstairs. Davis testified that the Defendant Turner was dropping off the new kilo of cocaine, which he had in his arms. The Defendants then came back down to the basement, and all three men exited and stood outside talking for a while.

Later that day, the Defendant Miller asked Davis to follow him to Rivergate Mall to meet Thompson, aka "Kentucky." Davis phoned the Defendant Miller who was in the food court area of the mall; the Defendant Miller stated he was "waiting on them to get done eating." Davis made plans to meet the Defendant Miller at a Mapco gas station following the exchange. After they met at the gas station, they proceeded to the Defendant Turner's residence, where only the Defendant Miller went inside. About five minutes later, he came back out to the car and grabbed a bag, which he stuffed in his coat, and went back inside. Later that evening, Davis and the Defendant Miller were arrested at a Mexican restaurant in Hermitage.

Previously, on March 10, 2006, Agent Smitherman saw Davis place a trash bag in the dumpster of the Defendant Miller's apartment complex. Agent Smitherman pulled the

trash and found three empty plastic "kilo wrappers," rubber gloves, a "cutting agent," and a sheet of paper showing a drug ledger. Additionally, on March 10, officers in the wireroom began listening to numerous conversations involving the Defendants, wherein the Defendants used code words for exchanging drugs and money.

*Miller*, 2010 WL 1644969, at *1–3 (footnote omitted).

## III.    ISSUES PRESENTED FOR REVIEW

In his petition for habeas corpus, Miller asserts the following claims for relief:

1. That the wiretap order issued in this case was invalid because it was issued by a judge who, prior to becoming a judge, had represented Miller on felony drug charges, such that the initial finding of probable cause was not made by a neutral and detached magistrate, in violation of the petitioner's Fourth Amendment rights;

2. That the evidence was insufficient as a matter of law to support the convictions of conspiracy to sell 300 grams or more of cocaine, or delivery of 300 grams or more of cocaine;

3. That the trial court erred in permitting the introduction of evidence not previously disclosed to Miller—that is, a powdery substance found in a box that held a set of scales—in violation of his right to due process as guaranteed by the Fifth and Fourteenth Amendments, and compounded the error by then permitting a detective not qualified as an expert to perform a field test on the substance in court before the jury and to offer his opinion that the substance tested positive for the presence of cocaine, in violation of the Due Process Clause and Rule 702 of the Tennessee Rules of Evidence;

4. That the trial court erred in imposing upon the petitioner consecutive sentences of 40 years for each count of conviction, for a total effective sentence of 120 years;

5. That trial counsel was ineffective for failing to move to exclude the evidence recovered from the petitioner's residence; and

6. That trial counsel was ineffective for failing to challenge the 120-year sentence based on sentencing disparity; and

7. That trial counsel was ineffective for failing to investigate sentencing mitigation factors.[2]

---

[2] These three ineffective-assistance claims are not actually framed as grounds for relief in Miller's habeas petition. Rather, they appear in response to Question 13(b) of the form habeas petition, which asks, "Is there any ground in this petition that has not been presented in some State or Federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them." (ECF No. 1, at 10.) The petitioner responded: "No motions were filed to exclude evidence recovered from Appellant's residence. The search warrant was sought after Appellant was in custody and there was no nexus between the crime and the residence. Trial lawyer neglected to submit motion. Trial lawyer did not challenge disparity

## IV.   STANDARD OF REVIEW

### A.   Defaulted or Unexhausted Claims

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once his federal claims have been raised in the highest state court available,[3] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

---

in sentencing nor did trial lawyer investigate mitigating factors on behalf of the Appellant." (ECF No. 1, at 10.) The Court construes the petition broadly as asserting independent claims based on these alleged failures.

[3] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

**B.     Standard of Review of Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the claims raised in Miller's petition for habeas relief.

## V. ANALYSIS AND DISCUSSION

### A. Claim 1: Invalidity of the Wiretap Order

Miller asserts that the trial court erred in refusing to grant his motion to suppress the evidence gathered through a wiretap, because the order authorizing the wiretap was issued by a judge who, prior to becoming a judge, had represented the petitioner in another criminal matter, some thirteen years previously. As a result, the petitioner asserts, the wiretap was not authorized by a "neutral and detached magistrate," in violation of the petitioner's rights under the Fourth Amendment to the United States Constitution, and under Article 1, Section 7 of the Tennessee Constitution. (ECF No. 1, at 5.)

This issue was raised in a pretrial motion to suppress, which the trial court denied. It was raised again in Miller's direct appeal, but the state appellate court considered the issue waived because it was not raised

in Miller's motion for a new trial and because the petitioner failed to include a transcript of the hearing on the motion to suppress or a copy of the wiretap application in the record on appeal. The court therefore reviewed the issue for plain error only. *Miller*, 2010 WL 1644969, at*5 (citing Tenn. R. App. P. 3(e); Tenn. R. Crim. P. 52(b); *State v. Adkisson*, 899 S.W.2d 626, 641–42 (Tenn. Ct. Crim. App. 1994) (setting fourth five factors that must be established to permit "plain-error" review of a waived issue). Applying that standard, the court first found that, because the transcript of the suppression hearing was not in the appellate record, the defendant had failed to clearly establish what occurred in the trial court. The appellate court also found, based on the trial court's order, that there was no breach of a clear and unequivocal rule of law:

> [T]he requirement that a neutral and detached magistrate issue a warrant emanates from the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution, which protect against unreasonable searches and seizures. The fact that Tennessee appellate courts have yet to address its application to our Wiretap Act does not negate the constitutional rule of law.

> Turning to that rule of law and its application to the present case, the trial court relied upon federal law for guidance and concluded that

>> the fact a judge previously served as defense counsel for a defendant while in private practice does not *per se* invalidate that the same individual can be [a] neutral and detached judge when issuing a search warrant or, as is the case here, a wiretap authorization order, for a subsequent case. There has been no evidence presented to this [c]ourt that Judge Watkins was biased or impartial when issuing the wiretap authorization against [the] Defendant.

> We agree with the trial court, finding federal law to be sufficiently persuasive authority on the subject.

*Miller*, 2010 WL 1644969, at *5–6. Because it found the first two of the five *Adkisson* factors were not satisfied, the court declined plain-error review, finding it unnecessary to consider the remaining three factors.

In this Court, the respondent argues that the claim fails simply because Fourth Amendment claims are not cognizable in federal habeas corpus petitions. (ECF No. 27, at 7.) The respondent is correct. In *Stone v. Powell*, 428 U.S. 465, 494–95 (1976), the Supreme Court held that where a state court has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a federal habeas court may not grant relief on the claim that evidence obtained in an unconstitutional search or seizure was introduced at trial. The Sixth Circuit has confirmed the continuing validity of that holding even after the enactment of AEDPA. *See, e.g.*, *Ray v. United States*, 721 F.3d 758, 762 (6th Cir.2013) (extending *Stone* to Fourth-Amendment claims raised by federal prisoners filing § 2255 motions).

Thus, a Fourth Amendment habeas claim may only proceed if it includes an allegation of procedural

dysfunction that precluded the petitioner from fully and fairly litigating the claim in state court. "A habeas petitioner may not seek habeas relief on a claim of illegal arrest if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). District courts within the Sixth Circuit use a two-step inquiry to assess adequacy of the state's processes. First, the court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim." *Id.* Second, the court asks "whether presentation of [the petitioner's] claim was in fact frustrated by a failure of that mechanism." *Id.*

Miller, in this case, filed a motion to suppress the evidence obtained through the wiretaps, asserting that the authorizing judge was not a neutral and detached magistrate. As discussed above, the trial court denied the motion and the petitioner appealed the ruling, though he neglected to include the issue in his motion for a new trial or to include the transcript of the motion hearing in the appellate record. The state appellate court's refusal to consider the merits of the claim did not result from a failure of the state's procedures for raising the claim. Instead, it resulted from trial counsel's error. It is clear that the state courts themselves provided an opportunity for full and fair litigation of the petitioner's Fourth Amendment claim. This claim is therefore not cognizable on federal habeas review.

Even if it were cognizable, this Court has reviewed the underlying record, including the hearing transcript on the motion to suppress and the trial court's written order denying the motion to suppress, and finds that the claim is substantively without merit. The petitioner failed to present any evidence from which a reasonable judge could have concluded either that the judge who authorized the wiretap had any pecuniary interest in reaching a conclusion against him in the case, or that the issuing judge was not neutral and detached in issuing the warrant. *See United States v. Barry-Scott*, 251 F. App'x 983, 992–93 (6th Cir. 2007) (articulating the standard for assessing neutrality, and finding that a judge's prior representation of the defendant and her husband on previous drug charges did not prevent the judge from being neutral and impartial in issuing the search warrant in a drug case nine to ten years later where there was no evidence of a pecuniary interest or that the judge had failed to act in a neutral and detached manner). For this reason too, the petitioner is not entitled to relief on the basis of this claim.

**B.      Claim 2: The Insufficiency of the Evidence**

Miller asserts that the evidence presented at trial was insufficient to convict him on two of the three charges against him: conspiracy to deliver 300 grams or more of cocaine and delivery of 300 grams or more of cocaine. He raised this claim in his direct appeal as well, arguing that the accomplice testimony of Kavares Davis was not corroborated. The Tennessee Court of Criminal Appeals rejected the claim, as follows:

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Moreover, on appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the convicting evidence. . . .

The Defendants argue that State failed to provide sufficient evidence to corroborate the accomplice testimony of Kavares Davis. It is well settled that, "[i]n Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). This "very salutary rule" is designed to prevent the "obvious dangers" of allowing a defendant to be convicted solely on the basis of an accomplice's testimony. *Sherrill v. State*, 321 S.W.2d 811, 814 (Tenn. 1959). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice.

With respect to the nature, quality, and sufficiency of the evidence necessary to corroborate an accomplice's testimony, this Court has held as follows:

The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

. . . .

The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction

independent of the accomplices testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*State v. Griffis*, 964 S.W.3d 577, 588--89 (Tenn. Crim. App. 1997).

The proof necessary to corroborate the accomplice's testimony must include "some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity." *Shaw*, 37 S.W.3d at 903. In other words, the corroboration must include some fact establishing the identity of the defendant as a criminal actor. It is generally for the trier of fact to determine whether sufficient corroboration exists. However, as this Court has previously pointed out, "[e]vidence which merely casts a suspicion on the accused . . . is inadequate to corroborate an accomplice's testimony." [*State v. Boxley*, 76 S.W.3d 381, 387 (Tenn. Crim. App. 2001).]

Pursuant to the wiretap order and police intercepted phone calls, officers believed that the Defendant Miller would be meeting with an individual from Kentucky at the Rivergate Mall for a drug transaction on March 24, 2006. Kavares Davis testified that the Defendant Turner delivered three kilos of cocaine to the Defendant Miller on March 23; however, one of these kilos was "bad," so the Defendant agreed to replace it the following day. On the morning of March 24, the wireroom intercepted a phone call between the Defendants, wherein the Defendant Miller asked the Defendant Turner to "come and drop it off." According to Davis, the Defendant Turner arrived at the apartment that morning with the replacement kilo of cocaine. He stated that he let the Defendant Turner in through the garage and that, after the sale was concluded, they stood outside of the apartment and talked for a little while. Officers observed all of these coming and goings at the apartment and noticed the blinds being closed once the Defendant Turner was inside the residence.

Davis testified that, later that day, he followed the Defendant Miller to the Rivergate Mall. Officers intercepted a call between Davis and the Defendant Miller while the Defendant Miller was inside the food court. Based on observations made by officers watching the Defendant Miller, it appeared a transaction had occurred between the male in the vehicle with Kentucky plates, later identified as Ned Wayne Thompson, and the Defendant Miller. Detective Kajihara saw Thompson put something inside the trunk of his car while he was stopped at a gas station. Thompson was then pulled over for speeding and, upon a search of the vehicle, officers located two separately packaged kilos of cocaine.

The Defendant Miller and Davis met at a Mapco gas station and proceeded to the Defendant Turner's residence. The Defendant Miller first went inside. He then came back outside, put a bag inside his coat, and returned inside the residence.

After the procurement of search warrants, officers found drugs and/or drug paraphernalia at the Defendants' residences. Much of the evidence was used in the resale process. During the time officers were intercepting the Defendants' calls, the Defendants used coded language common to drug dealers, setting up meetings to sell drugs and obtain money. Both Defendants had drug ledgers to record which customers owed money and how much was owed. Moreover, at the March 10 pull of the Defendant Miller's trash, items common for use in drug dealing were discovered.

From consideration of the proof in the record before us, we find the evidence sufficient to corroborate the testimony of the accomplice Kavares Davis. The accomplice's testimony was corroborated by the taped telephone conversations, officers observations, and the

evidence recovered from the respective residences. This issue is without merit.

*Miller*, 2010 WL 1644969, at *11–13 (some internal citations omitted).

In its ruling the Tennessee Court of Criminal Appeals accurately stated the applicable state and federal law, correctly identifying *Jackson v. Virginia* as the standard governing claims relating to the sufficiency of the evidence. Its decision was not contrary to and did not involve an unreasonable application of clearly established federal law, and its determination of the facts was not objectively unreasonable. The petitioner is not entitled to relief on the basis of this claim.

**C.     Claim 3: The Introduction at Trial of Non-Disclosed Evidence and In-Court Field Testing of Substance for Presence of Cocaine**

In his petition in this Court, Miller asserts that the trial court's error in permitting the introduction at trial of evidence not previously disclosed to the petitioner, and then permitting a witness to field-test that evidence —in court, before the jury—for the presence of cocaine, amounted to a violation of the Due Process Clause.

The facts relating to this claim are set forth in the petitioner's brief in his direct appeal to the Tennessee Court of Criminal Appeals. Witness Steve Talley, an agent with the Tennessee Bureau of Investigation who was involved in the investigation and the execution of a search warrant at co-defendant Ray Turner's house, testified that he had found a set of digital scales in a box in the dresser of the master bedroom. (Trial Tr. Vol. 1, at 131, ECF No. 28-5, at 131.) He initially testified, during cross-examination, that he had not detected any cocaine residue on the scales found at the house. (*Id.* at 166.) Upon questioning during re-direct, however, he stated that when he was "jostling" around the box that contained the scales just prior to his court appearance, he noticed a "white, chunky substance in the box that [he had] not previously seen." (*Id.* at 169.) At counsel's request, he put the white substance on the wooden rail in front of the witness's chair, for the jury to see, and later, at the court's request, scraped it into a plastic bag. He was not asked to identify the substance.

Later, the trial court permitted Detective Herbert Kajihara, while he was testifying, to perform a field-test on the white, chunky substance. The substance tested positive for the presence of cocaine. (Trial Tr. Vol. 3, at 416–22, ECF No. 28-7, at 29–35.) Prior to the testing, the defense attorneys objected on two grounds: first, that the chain of custody for the white substance in the box in which the scales were stored was not established, and second, that the substance had not been disclosed during discovery. The trial court overruled both objections.

In his direct-appeal brief, the petitioner argued again that the trial court had erred in admitting the

evidence—and permitting the field-test—because the white substance had not been disclosed during discovery and no chain of custody for the substance was established. (ECF No. 28-11, at 15–17.) The argument relied wholly on state law, without reference to federal case law or the United States Constitution. (*See id.*) In considering the issue, the Tennessee Court of Criminal Appeals concluded that the trial court had not abused its discretion in permitting the field-testing of the substance and its admission into evidence. The court further found that, because the substance tested was a small amount of cocaine that came from co-defendant Ray Turner's residence," any possible error was harmless to Miller in light of "the large amounts of cocaine involved in this case, the strong case of the State, and the fact that the substance was not connected to the Defendant Miller." *Miller*, 2010 WL 1644969, at * 8.

In other words, the petitioner did not present this issue to the state courts in the guise of a federal constitutional claim, and the court did not resort to federal law in resolving the issue. Instead, the claim was characterized and considered as a state-law evidentiary issue. The doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later raised in a federal habeas petition. *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009) (citing *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999)); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.").

Moreover, although the claims remain technically unexhausted, the petitioner is barred by Tennessee's one-year statute of limitations governing post-conviction petitions, Tenn. Code Ann. § 40-30-102(a), and the state's one-petition rule, Tenn. Code Ann. § 40-30-102(c), from presenting any of the claims to the state courts now. He does not argue that any of the circumstances enumerated in Tenn. Code Ann. § 40-30-117(a) permits him to re-open his post-conviction petition in the Tennessee courts. The claim is therefore considered to be exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review unless the petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Miller, however, has not acknowledged that his claim is defaulted, and has not argued cause or prejudice to overcome the procedural default, nor does he allege that the failure to consider the claim will result in a fundamental miscarriage of justice. And even if he had, as the respondent argues, the petitioner has failed

to show that any evidentiary ruling by the state court was so egregious that it resulted in the denial of fundamental fairness or due process of law. The petitioner is not entitled to relief on the basis of this claim.

### D. Claim 4: Excessive Sentence

In his habeas petition, Miller asserts that the trial court "erred as to the length of the sentence in this case by employing consecutive sentencing to sentence the Petitioner to a term of one hundred twenty years (120) to serve in the Tennessee Department of Corrections." (ECF No. 1, at 9.) This claim was exhausted in the petitioner's direct appeal, where the petitioner argued that the total length of the sentence was excessive and the trial court had improperly ordered that the three 40-year sentences run consecutively. The claim was not articulated in the state court, and is not raised here, under a federal theory. In considering the issue, the Tennessee Court of Criminal Appeals referred only to state law.

Insofar as the issue is a purely state-law claim, it is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a) (" The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*." (emphasis added))*; Galloway v. Howes*, 77 F. App'x 304, 305 (6th Cir. 2003) ("To the extent that Galloway contends that his sentence violates state law, the argument does not give rise to a cognizable claim for federal habeas corpus relief."). The petitioner is not entitled to relief on the basis of this claim.

Even if the petitioner had framed the issue as an Eighth-Amendment proportionality claim, such claim would fail. The Supreme Court has held that a mandatory life sentence without possibility of parole for a first offense of possession with intent to distribute more than 650 grams of cocaine, without any consideration of mitigating factors, was not "cruel and unusual" punishment prohibited by the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *see also Hutto v. Davis*, 454 U.S. 370 (1982) (rejecting an Eighth Amendment challenge to a prison term of 40 years (two consecutive 20-year terms) plus a fine of $20,000 for distribution and possession with intent to distribute approximately nine ounces of marijuana). Following *Harmelin*, the Sixth Circuit has ruled that "there is no requirement of strict proportionality; the eighth amendment is offended only by an extreme disparity between crime and sentence." *United States v. Hopper*, 941 F.2d 419, 422 (1991). The petitioner in this case received three very lengthy consecutive sentences, but he has the possibility of parole on all three sentences, unlike the petitioner in *Harmelin*. Moreover, his crimes of conviction involved three

kilograms of cocaine, not merely 650 grams. The petitioner's sentence did not violate the Eighth Amendment.

**E.       Claim 5: Ineffective Assistance of Counsel – Failure to Move to Exclude Evidence**

In his petition, the petitioner asserts, without argument, that his trial counsel failed to file a motion to exclude evidence recovered from his residence, even though the search warrant was procured after the petitioner was already in custody and there was no nexus between the charged crime and the petitioner's residence.

The petitioner raised this claim in his post-conviction appeal to the Tennessee Court of Criminal Appeals, but he arguably did not "fully and fairly" present the claim in that court. In the state court, he asserted only that "[i]n this case the trial counsel . . . made numerous errors," including that trial counsel "was ineffective for not filing a motion to suppress based on infirmities in the search warrant." (Pet'r's Post-Conviction App. Br. at 14, ECF No. 28-21, at 14.) He did not elaborate in his brief as to what infirmities he had identified in the search warrant or in what way he was prejudiced by his attorney's purported deficiency.

The Tennessee Court of Criminal Appeals considered the claim, noting that the petitioner had testified as the post-conviction hearing that counsel failed to file a motion to suppress the fruits of the search warrant, and that his counsel "told him that the motion would not be filed because counsel did not see any merits to the claim." *Miller v. State*, 2013 WL 2152548, at *3. Trial counsel in fact testified at the post-conviction hearing that he did not pursue a motion to suppress evidence seized pursuant to the search warrant executed at the petitioner's residence because he did not see any merit to the motion. He specifically explained his view that the evidence seized from the petitioner's trash "would have satisfied [a] magistrate to issue a search warrant" for the residence. *Miller v. State*, 2013 WL 2152548, at *5 . (*See* Post-Conviction Tr., ECF No. 28-19, at 51–52.) In reviewing the ineffective-assistance claims raised in post-conviction, the appellate court stated in pertinent part:

> To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

. . . .

> The petitioner failed to establish that trial counsel performed deficiently by refusing to file a motion to suppress evidence obtained pursuant to the search warrant executed at the petitioner's residence because counsel's accredited testimony established that such a motion would have been without merit.

*Miller v. State*, 2013 WL 2152548, at *6–7.

In addressing the claim, the Tennessee Court of Criminal Appeals correctly articulated the standard for proving ineffective assistance of counsel, as established by the Supreme Court in *Strickland v. Washington*. In *Strickland*, the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

The state court correctly articulated the standard established by *Strickland*. It reasonably applied that standard to conclude that trial counsel's decision not to file a motion to suppress the fruit of the search warrant was a tactical decision and that the petitioner could not have been prejudiced by the failure because it would

have been without merit. Because that determination was not unreasonable, the petitioner is not entitled to relief on the basis of this claim.

**F.      Claims 6 and 7: Ineffective Assistance of Counsel – Failure to Challenge Sentencing Disparity and Failure to Investigate Sentencing Mitigation**

The petitioner's remaining two claims, that his trial counsel was ineffective for failing to challenge his sentence based on sentencing disparity and for failing to investigate mitigating facts, were not presented to the state courts, and the petitioner is barred from presenting the claims in the state courts now by Tennessee's one-petition rule governing the filing of post-conviction petitions. Tenn. Code Ann. § 40-30-102(c). He does not argue that any of the circumstances enumerated in Tenn. Code Ann. § 40-30-117(a) permits him to re-open his post-conviction petition in the Tennessee courts. The claims are therefore considered to be exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review unless the petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Miller, however, has not acknowledged that these claims are defaulted, and has not argued cause or prejudice to overcome the procedural default, nor does he allege that the failure to consider the claims will result in a fundamental miscarriage of justice. The petitioner is not entitled to relief on the basis of these claims.

**VI.     CONCLUSION**

For the reasons set forth herein, Kenneth Miller's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

Todd Campbell
United States District Judge